AARON RICHARD GOLUB, ESQUIRE, PC
Attorneys for Plaintiff
42 East 64th Street
New York, New York 10065
ph: 212-838 4811
fx: 212-838-4869
ARG 6056

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X Civil Action No.

CRAIG ROBINS,                          10-CIV-2787-WHP-(ECF)

                    Plaintiff,         **FIRST AMENDED COMPLAINT
                                       (Jury Trial Demanded on
                                       all non-equitable
                                       claims)**

          -against-

DAVID ZWIRNER,
DAVID ZWIRNER GALLERY, LLC, and
DAVID ZWIRNER, INC.,

                    Defendants.
-------------------------------------X

RECEIVED
APR 12 2010
U.S.D.C. S.D. N.Y.
CASHIERS

     Plaintiff CRAIG ROBINS, by his attorney, AARON RICHARD

GOLUB, ESQUIRE, PC as and for his first amended complaint,

alleges as follows:

                        **THE PARTIES**

     1.   Plaintiff is a private collector of contemporary

art and design.  At all relevant times, plaintiff's domicile and

principal place of business was and is in Miami Beach, Florida.

     2.   Upon information and belief, at all relevant

times, defendant DAVID ZWIRNER ("DZ")is and was domiciled in New

York and is and was the principal owner and/or majority member

of defendants DAVID ZWIRNER GALLERY, LLC ("DZG") and DAVID
ZWIRNER, INC. ("DZI").

3.    Upon information and belief, defendant DZG is a
Delaware limited liability company authorized to conduct
business in the State of New York with its principal place of
business located at 525 West 19th Street, New York, New York.
DZG is a gallery principally engaged in the business of
exhibiting, purchasing and selling items of Modern and Classic
Contemporary art in both the Primary and Secondary Markets.[1] At
all relevant times, DZG was principally owned and operated by
DZ.

4.    Upon information and belief, defendant DZI is a
corporation duly organized under the laws of the State of New
York with its principal place of business located at 525 West
19th Street, New York, New York and is principally engaged in
the business of exhibiting, purchasing and selling items of
Modern and Classic Contemporary art in both the Primary and
Secondary Markets. At all relevant times, DZI was principally
owned and operated by DZ.

---

[1] The Primary Market refers to artwork sold in the market for the
first time through a gallery or art exhibition.  The price for
that specific artwork is established for the first time. The
second time the artwork is sold and all subsequent sales of it
occur in the Secondary Market.

## JURISDICTION

5.    This is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C sec. 1332(a)(1) the diversity jurisdiction statute.   Complete diversity of citizenship exists between all proper parties to this action.

6.    Plaintiff, a United States citizen and domiciled in the State of Florida, asserts claims arising from a breach of contract and fraud, against defendants, one of whom is a United States citizen and domiciled in the State of New York, one is a limited liability company incorporated in the State of Delaware and domiciled in the State of New York, and one is a domestic business corporation domiciled in the State of New York. Complete diversity exists between the parties in this action.

7.    The first amended complaint seeks equitable and injunctive relief and alternatively, inter alia, compensatory damages believed to be in excess of Three Million Dollars ($3,000,000.00) exclusive of costs and interest.   Accordingly the amount in controversy is in excess of the statutory minimum of seventy-five thousand dollars ($75,000.00).

## FACTUAL BACKGROUND

8.    In or about December, 2004, plaintiff sold the painting "Reinhardt's Daughter" (1994) by Marlene Dumas ("MD") through defendants.   As a material inducement, to sell

-3-

"Reinhardt's Daughter" through defendants in the Secondary
Market, the sale was subject to a confidentiality agreement in
which defendants agreed, among other things, to keep the sale
and plaintiff's identity strictly confidential ("Agreement I").

9.    Plaintiff believed defendants' representations
that defendants would maintain plaintiff's identity strictly
confidential, when in fact defendants never had the intent to
maintain confidentiality because defendants were seeking to
exclusively represent the artist MD and intended to gain favor
with MD by disclosing such confidential information to MD, in
the hope of securing MD's consent to exclusively represent MD.

10.    Thereafter in early 2005, defendants breached
Agreement I by disclosing to MD that plaintiff had in fact sold
"Reinhardt's Daughter," which defendants ultimately,
apologetically and unequivocally admitted when plaintiff called
defendants out on the issue.  MD then immediately placed
plaintiff on her personal "blacklist", i.e., that plaintiff
would not be able to buy any MD artwork in the Primary Market.
Plaintiff's placement on MD's blacklist was and is a direct
result of defendants breach of the confidentiality of Agreement
I.

11.    The false and fraudulent statements,
representations and warranties of confidentiality so made by
defendants in Agreement I were known by defendants to be false

when made and were made with intent to deceive and defraud
plaintiff and to materially induce plaintiff to enter into
Agreement I.    Plaintiff would not have entered into Agreement I
had plaintiff known the truth of the matter and has been
accordingly damaged.

12.    Defendants, disingenuously or otherwise,
expressed remorse to plaintiff for breaching Agreement I and in
consideration of not commencing an action against defendants,
entered into a further agreement with plaintiff, which
specifically, among other things, provided that at such time
that defendants exhibited works by MD, plaintiff would have
first choice, after museums, to purchase one or more MD works of
art at the time of such exhibition, plaintiff would have access
again to MD's Primary Market work and plaintiff be removed from
the blacklist ("Agreement II").

13.    Upon information and belief, sometime in 2008,
defendants became MD's exclusive representative, dealer and/or
gallery.

14.    Defendants have mounted their first exhibition of
MD's Primary work entitled "Against the Wall."    Its duration is
from March 18, 2010 through April 24, 2010 at defendants'
gallery located at 525 West 19th Street in New York City.
Plaintiff demanded that defendants fulfill the terms of
Agreement II with plaintiff and defendants refused to do so and

did not give plaintiff first choice after museums to purchase
one or more works of art by MD from the "Against the Wall"
exhibition and instead, reluctantly gave plaintiff the right to
purchase only (and no other work) MD's most aesthetically
undesirable work that is not even exhibited in defendants'
exhibition rooms.

15.  Plaintiff relied upon and believed defendants'
representations in Agreement II that defendants would give
plaintiff first choice after museums to purchase one or more
works of art by MD from the possible exhibition (which has
occurred), plaintiff would have access again to MD's Primary
Market work and plaintiff would be removed from the blacklist,
when in fact defendants never had the intent to give plaintiff
first choice, or remove plaintiff from the blacklist and/or
provide plaintiff with full access to MD's Primary Market work
because defendants were seeking to materially placate plaintiff
and to stop plaintiff from commencing a lawsuit to protect his
rights and/or recover damages caused by defendants' breach of
and/or fraudulent inducement of Agreement I.

16.  When plaintiff discovered he was on MD's
blacklist, plaintiff realized he would not have access to MD's
Primary works.  Plaintiff would have stopped collecting MD's
works had plaintiff known that the blacklist would continue.

17. The unconscionable injury to plaintiff and plaintiff's collection includes, in part, the works referenced below, which plaintiff would not have purchased to improve plaintiff's collection, and enhance plaintiff's reputation, and repeatedly exhibiting plaintiff's collection featuring MD's work. In reliance upon Agreement II:

i. In June 2005, plaintiff purchased a set of seven MD drawings for $125,000.00. It was a major grouping of erotic drawings by MD called "Two of the Same Kind" (1993), Ink on paper, 17 x 11 1/2 inches;

ii. In December, 2005, plaintiff acquired "Fishbowl County", (1987), Oil on canvas, 43 x 51 inches, worth approximately $500,000.00, to further build my MD collection;[2]

iii. In December, 2005, plaintiff very prominently featured MD by hanging one of MD's major works in plaintiff's house, which, is often open for Miami Basel Art Fair tours in December of each year;

iv. In 2005, the University of Florida did an exhibition of plaintiff's art collection (called Greater than the Sum: Selections from the Craig Robins Collection), in which plaintiff featured the following three major works by MD:

Imaginary 3, 2003;
Past & Present Preserved, 2000; and
No More One Liners, 1993.

v. In 2007, two complete major walls of plaintiff's offices, open to the public, featured eight major paintings and large scale drawings of MD's work. MD

---

[2] Plaintiff's purchase of "Two of the Same Kind" and "Fishbowl County" in the Secondary Market (i.e. at higher prices, underscores plaintiff's unwavering objective to continue collecting MD's Primary (as well as Secondary) works, anticipating defendants having plaintiff removed off the blacklist and give plaintiff access to MD's work.

was the most prominently featured artist in plaintiff's offices in 2007.

vi.  In 2008, at my house, in connection with plaintiff's practice to have major collectors tour plaintiff's house during the Miami Basel Art Fair, plaintiff featured seven MD works in plaintiff's house;

vii. Each year, from 2005 to the present, during Miami Basel Art Fair, hundreds if not thousands of people tour plaintiff's house and offices to see plaintiff's collection which is open to the public.  The artists works that plaintiff decides to feature is determined by who plaintiff is collecting, and who plaintiff believes in, which also is a big commitment by plaintiff to those artists.  One of the major collections plaintiff featured is MD's works;

viii. April 2006 - Ofili painting.  Plaintiff gave DZ a 50% interest in a Chris Ofili painting worth between $800,000.00 to a $1,000,000.00 for the discounted sum of $275,000.00.  If plaintiff believed plaintiff would be still blacklisted, not be given first choice or denied access to primary works by MD, plaintiff would never have entered into the Ofili deal with defendants.  Plaintiff's motivation in allowing an approximate $230,000.00 discount to DZ was directly related to DZ living up to the terms of Agreement II. In point of fact, the Ofili deal was expressly, in writing, conditioned on resolving defendants breach of the confidentiality provision of Agreement I, which plaintiff personally communicated to Kristine Bell, defendants' gallery manager, stating that plaintiff was willing to have a future with defendants, but would first have to resolve the past; and

ix.  Plaintiff refrained from suing defendants for defendant's breach of the confidentiality provisions of the Reinhardt's Daughter sale.

18.  In March 2010, plaintiff advised defendants, which defendants have fully ignored, that plaintiff's first choice was any one or more of the following three paintings by

MD at the "Against the Wall" exhibition (collectively, "Three
Paintings"):

      i.   "Figure in a Landscape" (2010)
          Oil on linen
          70 7/8 x 118 1/8 x 1 inches (180 x 300 x 2.5 cm)
          DUMMA0188

     ii.   "Under Construction" (2009)
          Oil on linen
          70 7/8 x 118 1/8 x 1 inches (180 x 300 x 2.5 cm)
          DUMMA0189

   iii.   "Wall Weeping" (2009)
          Oil on linen
          70 7/8 x 118 1/8 x 1 inches (180 x 300 x 2.5 cm)
          DUMMA0191

    19.  On March 24, 2010, plaintiff's counsel advised
defendants' counsel in writing of plaintiff's first choices of
artwork by MD at the "Against the Wall" exhibition from which
plaintiff had the right to purchase one or more works.
Defendants failed to respond and the within action was commenced
expeditiously.

    20.  Despite due demand, defendants failed and refused
to offer any of the Three Paintings to plaintiff for purchase
and are attempting to defeat and thwart plaintiff's rights by
offering the Three Paintings to other dealers, collectors and
museums. Also, plaintiff still remains on MD's blacklist and
plaintiff has not been granted full access to MD's Primary
Market works.

21. Defendants' breach and/or fraudulent inducement of Agreement II has caused plaintiff to suffer irreparable damage as defendants fraudulent representations and omissions deprived Plaintiff of Plaintiff's rights as aforesaid, degrades and/or diminishes Plaintiff's current collection and takes Plaintiff's current collection off the list of frontier collectors of MD's work and limits Plaintiff's ability to have a full cross-section of MD's work.

22. The Three Paintings from the "Against the Wall" exhibition are unique, irreplaceable, and represent a limited and special body of work that relates to the subject matter of Israel and this is MD's first exhibit of Primary Market work in the United States in nine years. Defendants may not have another exhibit of MD's work as MD could change galleries at any time. Plaintiff obviously could not maintain such a first choice agreement with any other gallery or for MD's work as no other gallery represents MD. Plaintiff has a clear agreement, has rights which demonstrate a likelihood of success on the merits, and will suffer irreparable harm as the subject paintings are unique and money damages will not suffice to satisfy claims.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Specific Performance – Agreement II)

23.   Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

24.   Defendants refuse to acknowledge plaintiff's legal interest in any of the Three Paintings by giving plaintiff first choice, after museums, to purchase one or more MD works of art from defendants' "Against the Wall" exhibition, to remove plaintiff from the blacklist and provide plaintiff with access to MD's Primary Market work.

25.   Plaintiff has no adequate remedy at law.

26.   As a result of the foregoing, Plaintiff is entitled to specific performance of Agreement II by defendants. Plaintiff is also entitled to a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Agreement II)

27.   Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

28.   Plaintiff faithfully and duly performed all of the terms and conditions required of plaintiff to be performed concerning Agreement II.

29.   Defendants materially breached Agreement II by failing and refusing to give plaintiff first choice after museums to purchase one or more works of art by MD from the "Against the Wall" exhibition, and/or failing and refusing to remove plaintiff from the blacklist and/or failing to give plaintiff full access to MD's Primary Market work, including without limitation failing and refusing to offer any of the Three Paintings to plaintiff for purchase and/or failing and refusing to accept plaintiff's choice to purchase any of the Three Paintings.

30.   As a result of the foregoing, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum one or more of the Three Paintings, and maintaining the status quo ante and in the event the Court does not grant equitable relief, alternatively, as a result of the foregoing, plaintiff has been damaged in a sum exceeding $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fraudulent Inducement – Agreement II)

31. Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

32. To materially induce plaintiff to refrain from taking legal or otherwise action against defendants to protect his rights and/or recover damages for defendants' breach and/or fraudulent inducement of Agreement I, defendants purposefully, falsely and fraudulently misrepresented that at such time that defendants exhibited works by MD, plaintiff shall have first choice, after museums, to purchase one or more such works of art by MD from such exhibition, plaintiff shall have access again to MD's Primary Market work and plaintiff shall be removed from the blacklist.

33. As aforesaid, defendants never intended to give plaintiff such first choice to purchase one or more such works of art by MD from such exhibition, and/or remove plaintiff from the blacklist and/or provide plaintiff full access to MD's Primary Market work.

34. Defendants made each of the foregoing misrepresentations of first choice to purchase, removal from the blacklist and full access to MD's Primary Market works, to plaintiff with knowledge of their falsity and with the intent and for the purpose of materially defrauding plaintiff.

- 13 -

35.   Plaintiff actually and justifiably relied on the misrepresentations and omissions of defendants set forth above.

36.   Plaintiff, believing in the truth of defendants' statements and representations, and in reliance upon those statements and representations, was thereby materially induced to refrain from suing defendants or taking other legal action to protect his rights and recover damages, and/or enter into Agreement II, which plaintiff would not have done had plaintiff known the truth of the matter and accordingly has been damaged.

37.   As a result of the foregoing, plaintiff seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante, and in the event the Court does not grant equitable relief, alternatively, as a result of the foregoing, plaintiff has been damaged in a sum exceeding $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto, and is further entitled to exemplary damages in a sum in excess of $5,000,000.00 as the conduct of defendant demonstrates reprehensible motives and such wanton dishonesty as to imply a criminal indifference to civil obligations.

- 14 -

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Agreement I)

38.    Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

39.    Plaintiff faithfully and duly performed all of the terms and conditions required of plaintiff to be performed concerning Agreement I.

40.    Defendants materially breached Agreement I by disclosing to MD that plaintiff had sold "Reinhardt's Daughter."

41.    Defendants' breach of Agreement I is a material breach which caused MD to place plaintiff on her personal "blacklist" i.e. that plaintiff would not be able to buy any artwork by MD in the Primary Market.

42.    As a result of the foregoing, plaintiff has been damaged in a sum exceeding $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Fraudulent Inducement – Agreement I)

43.    Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

44.    To materially induce plaintiff to sell "Reinhardt's Daughter", defendants purposefully, falsely and fraudulently misrepresented that defendants would, among other

things, keep plaintiff's identity strictly confidential and not disclose plaintiff's identity to the artist MD.

45.   As aforesaid, defendants never intended to maintain confidentiality from MD and did not do so.

46.   Defendants made each of the foregoing misrepresentations of confidentiality to plaintiff with knowledge of their falsity and with the intent and for the purpose of defrauding plaintiff.

47.   Plaintiff actually and justifiably relied on the misrepresentations and omissions of defendants set forth above in selling "Reinhardt's Daughter."

48.   Plaintiff, believing in the truth of defendants' statements and representations, and in reliance upon those statements and representations, was thereby induced to sell "Reinhardt's Daughter", which plaintiff would not have done had plaintiff known the truth of the matter and accordingly has been damaged.

49.   As a result of the foregoing, plaintiff has been damaged in a sum exceeding $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto and is further entitled to exemplary damages in a sum in excess of $5,000,000.00 as the conduct of defendant demonstrates reprehensible motives and such

wanton dishonesty as to imply a criminal indifference to civil obligations.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Promissory Estoppel – Agreement II)

50.  Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

51.  Defendants clearly and unambiguously promised plaintiff would have first choice, after museums, to purchase one or more such works of art by MD at defendants "Against the Wall" exhibition, that plaintiff would have access again to MD's Primary work and plaintiff would be taken off the blacklist.

52.  Plaintiff reasonably and foreseeably relied on the promises that defendants made to plaintiff when plaintiff entered into Agreement II with defendants.

53.  Plaintiff has suffered injury, rising to the level of unconscionable injury, in reliance on defendant's promises as set forth above in par. 17.

54.  As a result of the foregoing, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum one or more of the Three Paintings, and maintaining the status quo ante and in the event the Court does not grant equitable relief, alternatively, as a result of the foregoing, plaintiff has been damaged in a sum

exceeding $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Equitable Estoppel – Agreement II)

55. Plaintiff repeats and realleges all of the foregoing allegations as if fully set forth herein.

56. Defendants, through their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation, and other conduct, induced and caused plaintiff to believe that Agreement II existed between plaintiff and defendants pursuant to which plaintiff would have first choice, after museums, to purchase one or more such works of art by MD at that exhibition, that plaintiff would have access again to MD's Primary work and plaintiff would be taken off the blacklist.

57. Plaintiff relied prejudicially on defendants' words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct in that plaintiff, based on such reliance, changed his position in such a way as to suffer injury as set forth in par. 17.

58. Defendants knew or should have known that plaintiff would rely on defendants words, actions, inactions

- 18 -

constituting a concealment of facts and/or a false misrepresentation and other conduct, and defendants knew or should have known that plaintiff would detrimentally change his position in reliance on defendants words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct evidencing the existence of Agreement II between the parties.

59. As a result of the foregoing, defendants are equitably estopped and absolutely precluded from denying the existence or enforceability of Agreement II between plaintiff and defendants.

60. As a result of the foregoing, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum one or more of the Three Paintings, and maintaining the status quo ante and in the event the Court does not grant equitable relief, alternatively, as a result of the foregoing, plaintiff has been damaged in a sum exceeding $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto.

## JURY DEMAND

Plaintiff demands a jury for all non-equitable claims

stated herein.

WHEREFORE, plaintiff demands judgment against defendants as follows:

a.    On the First Cause of Action, against defendants, a judgment:

i.    ordering and decreeing that defendants specifically perform Agreement II; and/or

ii.    adjudging that the plaintiff has the right of first choice after museums to purchase one or more works of art by MD from the "Against the Wall" exhibition.

Plaintiff is also entitled to a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante;

b.    On the Second Cause of Action, against defendants, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante; and

In the event the Court does not grant equitable relief, alternatively, plaintiff duly seeks a judgment against defendants for a sum in excess of $3,000,000.00, together with

legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto.

     c.  On the Third Cause of Action, against defendants, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante; and

     In the event the Court does not grant equitable relief, alternatively, plaintiff duly seeks a judgment against defendants for a sum in excess of $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto, and is further entitled to exemplary damages in a sum in excess of $5,000,000.00 as the conduct of defendants demonstrates reprehensible motives and such wanton dishonesty as to imply a criminal indifference to civil obligations.

     d.  On the fourth cause of action against defendants, plaintiff duly seeks a judgment against defendants for a sum in excess of $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including

without limitation all consequential and incidental damages related thereto;

e.   On the fifth cause of action against defendants, plaintiff duly seeks a judgment against defendants for a sum in excess of $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto, and is further entitled to exemplary damages in a sum in excess of $5,000,000.00 as the conduct of defendants demonstrates reprehensible motives and such wanton dishonesty as to imply a criminal indifference to civil obligations;

f.   On the Sixth Cause of Action, against defendants, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante; and

In the event the Court does not grant equitable relief, alternatively, plaintiff duly seeks a judgment against defendants for a sum in excess of $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto; and

g. On the Seventh Cause of Action, against

defendants, plaintiff duly seeks a judgment or order enjoining and restraining defendants or their agents from selling, removing, disposing of, and/or otherwise transferring, at a minimum, one or more of the Three Paintings, and maintaining the status quo ante; and

In the event the Court does not grant equitable relief, alternatively, plaintiff duly seeks a judgment against defendants for a sum in excess of $3,000,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto; and

h.   Granting to the plaintiff such other and further relief as this Court shall deem just and proper, together with the costs and disbursements of this action, and reasonable attorney's fees.

Dated:   New York, New York
         April 12, 2010

Respectfully submitted,

_____
AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorney for Plaintiff
42 East 64th Street
New York, New York 10065
ph: 212 838 4811
fx: 212 838 4869
ARG 6056

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
========================================
Civil Action No. 10-CIV-2787-WHP-(ECF)

CRAIG ROBINS,

Plaintiff,

-against-

DAVID ZWIRNER,
DAVID ZWIRNER GALLERY, LLC, and
DAVID ZWIRNER, INC.,

Defendants.

**SUMMONS AND FIRST AMENDED COMPLAINT**

*Attorney for Plaintiff*
*Office and Post Office Address, Telephone*
Aaron Richard Golub, Esquire, P.C.
42 East 64th Street
New York, New York 10065
212-838-4811

To

Attorney(s) for

Service of copy of the within is hereby admitted

Dated

...........................................................
Attorney(s) for

---

=======NOTICE OF ENTRY=======
PLEASE take notice that the within is a (certified)
true copy of a

duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.

*Office and Post Office Address*
Aaron Richard Golub, Esquire, P.C.
42 East 64th Street
New York, New York 10065

Attorney for

To

Attorney(s) for

=======NOTICE OF SETTLEMENT=======
PLEASE take notice that an order
of which the within is a true copy will be presented
for settlement to the Hon.

on

at                    M.

Dated,

Yours, etc.

Attorney for

Aaron Richard Golub, Esquire, P.C.
42 East 64th Street
New York, New York 10065